# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JOHN R. ERBES,

    Plaintiff,

    v.

MILWAUKEE AREA TECHNICAL COLLEGE
 DISTRICT,
MARK TRASK,
LESTER C. INGRAM,
VIVIAN E. JOYNER,                    Case No. 06-C-667
GARY HAMBURG,
RACQUEL WARD
 a/k/a RACQUEL P. RODDY,
SHEILA D. COCHRAN,
LAUREN C. BAKER,
JULIAN E. JASPER and
WILLIAM J. RODEN,

    Defendants.

## DECISION AND ORDER

## NATURE OF CASE

The plaintiff, John R. Erbes, who is proceeding pro se, filed this action in Milwaukee County Circuit Court against the defendants on February 13, 2006. The defendants subsequently removed the case to federal court and filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) which the court granted in part and denied in part. The court dismissed all of the plaintiff's claims with the exception of the plaintiff's claims that the defendants violated and conspired to violate his due process rights under 42 U.S.C. § 1983.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was

assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72.1 (E.D. Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73.1 (E.D. Wis.).

Defendant Lester C. Ingram filed a motion for summary judgment on March 21, 2008. (Docket # 106). On the same day, defendants Milwaukee Area Technical College, Racquel Ward, Sheila Cochran, Lauren C. Baker, Julian Jasper, William Roden, Mark Trask, Vivian E. Joyner and Gary Hamburg filed a joint motion for summary judgment. (Docket # 109). These motions are ready for resolution and will be addressed herein.

## DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

### Standard for Summary Judgment

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); McNeal v. Macht, 763 F.Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that under the applicable substantive law "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The burden of showing the needlessness of a trial – (1) the absence of a genuine issue of material fact and (2) an entitlement to judgment as a matter of law – is upon the movant. In determining whether a genuine issue of material

fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. Anderson, 477 U.S. at 267; see also, Celotex Corp., 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . ."); Fed. R. Civ. P. 56(e). "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322 (emphasis added).

## RELEVANT UNDISPUTED FACTS[1]

Milwaukee Area Technical College (MATC) is a State of Wisconsin Technical College District located at 700 W. State Street, Milwaukee, Wisconsin. The plaintiff was employed by MATC from May 1980 through June 30, 2000. In June 2000, the plaintiff's position was Director of Technical Services in the Information Technology Department. As a part of his basic duties, the plaintiff was in charge of MATC's computer network system from both an academic and administrative standpoint. He also did some help desk operations and other information technology-related tasks. Mr. Mark Trask, Associate Vice President of Information

---

[1] Unless accompanied by citation, the relevant facts are taken from the proposed findings of fact to the extent they are not disputed. However, citations to sources of quoted excerpts have been included, even when those excerpts are undisputed.

3

Technology, was the plaintiff's immediate supervisor from approximately August 1999 until June 2000.

Following the plaintiff's departure from MATC in June 2000, the plaintiff obtained an information technology position at Electronic Cable Services (ECS), located in Franklin, Wisconsin. There was only a "few weeks gap" between the time the plaintiff's employment ended at MATC and when he started at ECS. At ECS, the plaintiff "was paid precisely what [he] was paid during [his] last year at MATC, which was something about 74,000." (Declaration of Neil B. Stekloff [Stekloff Decl.], Exh. A, Deposition of John Erbes [Plaintiff's Dep.] at 99). The sole reason for the plaintiff's termination from ECS in 2001 was that "the company had undergone a very bad drop in business, which was further exacerbated by [the events of September 11, 2001]" and ECS "laid off approximately 40 percent of their work force . . .." Id. at 100.

While at MATC, the plaintiff worked under a series of annual employment contracts. The contracts were subject to renewal or nonrenewal every year. The plaintiff understood that MATC could decide not to renew his employment contract for any reason, so long as MATC initiated a timely action of nonrenewal.

The plaintiff's final employment contract dated May 17, 1999, provided that the plaintiff would be employed by MATC for a one-year period beginning on July 1, 1999, and ending on June 30, 2000. The contract stated nothing on its face about automatic renewal or nonrenewal at the end of the contract term. The contract incorporated MATC Policy #C0505 (Policy #C0505) by reference. Policy #C0505 contained renewal and nonrenewal provisions applicable to the plaintiff as an unrepresented employee. The automatic renewal and nonrenewal provisions in Policy #C0505 applied to the plaintiff's 1999-2000 contract.

4

The applicable Renewal/Nonrenewal provision of Policy #C0505 states in relevant part:

> The president shall recommend to the district board that a contract either be renewed or not renewed. That recommendation may be based on numerous considerations including, but not limited to, performance appraisals, failure to conform to a performance improvement plan, and such other matters as may be deemed appropriate.
>
> The district board may act on the president's recommendation so that a written preliminary notice of nonrenewal will be issued no later than February 28.

(Stekloff Decl., Exh. A, Plaintiff's Dep., Exh. 2 at 6). It did not limit the reasons that the MATC president may recommend nonrenewal to the district board. The Renewal/Nonrenewal provision also contained a procedure for an employee to appeal a preliminary notice of nonrenewal which included the right to a hearing. That provision stated in relevant part:

> The district board will review and act on the employee's appeal. Review shall consist of a hearing to consider the documentation and any testimony supporting or contesting the decision to nonrenew. Following its review, the district board will issue a written disposition to uphold or reverse the decision. The district board shall provide final notice of nonrenewal by March 15.

Id. The provision contained no substantive limitations on the board's discretion to adopt or reject the president's recommendation of nonrenewal. The only limitation on MATC's right not to renew as set forth in the Renewal/Nonrenewal provision in Policy #C0505 was that it must provide timely notification, i.e., if the board chose nonrenewal, it must issue the preliminary determination of nonrenewal by no later than February 28th.

On January 28, 2000, the plaintiff's mid-year performance appraisal review was held. At that performance appraisal review, Mr. Trask stated: "What makes it sad is that I have already expressed to you that I want you around here for many years to come. But how can we work together when you keep giving me dates that you don't make good on, and then when I hold you accountable to those things that you say you are going to do, you get very upset."

5

(Declaration of John Erbes [Plaintiff's Decl.], Exh. P-14). On February 2, 2000, three working days after the plaintiff's performance review, Mr. Trask sent a memo to Mr. Ingram recommending that "[a]s a result of the above on-going failures to direct Technical Services appropriately, I recommend that John Erbes' contract not be renewed." Id., Exh. P-8; Stekloff Decl., Exh. A, Plaintiff's Dep., Exh. 3 at 1.

On February 8, 2000, John Burkholz sent a memorandum to the MATC district board. Attached to that memorandum were the memoranda of Lester Ingram, Vice President of Administrative Services, and Mr. Trask. This set of documents contained all of Mr. Trask's allegedly "stigmatizing charges" that were presented to the MATC district board. The documents pertained to Mr. Trask's perception of the plaintiff's poor job performance and inability to meet MATC's performance expectations. For example, Mr. Trask's January 28, 2000, memorandum to Vivian Joyner, Associate Vice President for Human Resources and Labor Relations, referenced that the plaintiff participated in a formal performance improvement plan. Mr. Trask's February 2, 2000, memorandum to Mr. Ingram, also discussed the plaintiff's failure to comply with the performance improvement plan. Mr. Trask recommended that the plaintiff's contract not be renewed. Mr. Burkholz's memorandum and the attached documents were not disseminated to anyone beyond MATC employees, district board members and MATC's attorneys. (Stekloff Decl., Exh. A, Plaintiff's Dep. at 64-65).

The MATC district board met on February 15, 2000. The plaintiff did not receive actual notice of the MATC board meeting of February 15, 2000, where the board went into closed session to consider the recommendation for nonrenewal of his employment contract. The board posted the minutes from the open session of its February 15, 2000, board meeting on the internet. The minutes posted from that meeting indicated that the district board had issued

6

a preliminary determination of nonrenewal to the plaintiff, as well as the vote of each board member on the issue. The MATC district board also posted the minutes from the open session of its March 6, 2000, board meeting on the internet. Those minutes stated that the district board voted to issue a final determination of nonrenewal to the plaintiff, and listed how each district board member voted on the issue.

The MATC district board posted the minutes from another meeting held on May 23, 2000, to discuss a potential "settlement agreement" between the plaintiff and MATC. These minutes indicated that the district board "turned down the proposed settlement." (Stekloff Decl., Exh. A., Plaintiff's Dep. at 73). Other than the district board meeting minutes of February 15, 2000, March 6, 2000, and May 23, 2000, the plaintiff is not aware of any other allegedly "stigmatizing information" publicized by the defendants. (Stekloff Decl., Exh. A, Plaintiff's Dep. at 73-74).

The plaintiff received written notice of MATC's preliminary determination of nonrenewal of his contract pursuant to Policy #C0505 on February 16, 2000. A copy of Policy #C0505 was attached to the notice. The notice informed the plaintiff that, "[u]nder Policy #C0505, you have the right to appeal the preliminary notice of nonrenewal. If you wish to appeal, please follow the procedure set forth in Policy #C0505." (Stekloff Decl., Exh. A, Plaintiff's Dep., Exh. 2 at 1). Section 3(a) of Policy #C0505 contained procedures with respect to an "Appeal of Nonrenewal." (Stekloff Decl., Exh. A, Plaintiff's Dep. at 7). The notice also enclosed a copy of MATC President Burkholz's recommendation to the district board for nonrenewal of the plaintiff's contract, together with all of the supporting attachments. The plaintiff is not aware of any other reasons for the board's preliminary determination of nonrenewal.

7

Case 2:06-cv-00667-PJG   Filed 11/17/08   Page 7 of 19   Document 142

The plaintiff appealed the preliminary determination of nonrenewal by letter dated February 22, 2000, from Attorney Anne Shindell, the plaintiff's counsel at the time. On February 22, 2000, MATC sent the plaintiff notice that his appeal hearing would take place on March 6, 2000, beginning at 5:00 p.m. in the MATC board room. The notice sent to the plaintiff enclosed a copy of Policy #C0505, which contained the applicable nonrenewal appeal procedures.

On February 24, 2000, MATC sent a letter to Attorney Shindell providing additional details regarding the format of the plaintiff's March 6, 2000, appeal hearing. The letter stated that the plaintiff was permitted to "present documentation and present testimony in the form of an oral statement" at the appeal hearing. (Stekloff Decl., Exh. A, Plaintiff's Dep., Exh. 6). It also stated that up to one hour of time would be devoted to the plaintiff's appeal and that the plaintiff would have 45 minutes of that hour to make his presentation to the MATC district board. Additionally, it stated that the plaintiff could submit documents supporting his case to the MATC district board in advance of the March 6, 2000, appeal hearing, if he wished.

Prior to the March 6, 2000 appeal hearing, the plaintiff submitted to the district board more than 200 pages of documents which he believed supported his claim that nonrenewal was unjustified and should be reversed. This included a 22-page detailed response to Mr. Trask's specific criticisms set forth in MATC President Burkholz's memorandum to the district board. The plaintiff's 200-plus page documentary submission to the MATC district board included everything that the plaintiff believed was important to the nonrenewal issue before the district board.

The plaintiff's appeal hearing took place before the MATC district board on March 6, 2000, and was transcribed in full by a court reporter. The plaintiff was represented by Attorney

8

Shindell. One hour was allocated to the plaintiff's appeal hearing. Of that one hour, the plaintiff and his counsel received 45 minutes to make a presentation of his case. The plaintiff, by his attorney, was able to present all of the information he intended to present at the March 6, 2000, appeal hearing.

The plaintiff was present at the March 6, 2000, hearing when William Roden, Vice President and General Counsel at MATC, provided a verbal summary of the basis for the nonrenewal recommendation. The plaintiff received the opportunity to speak on his own behalf during the appeal hearing and was present when the district board voted to issue a final determination of nonrenewal. The plaintiff received the district board's final determination of nonrenewal pursuant to Policy #C0505 at the March 6, 2000, board meeting.

The same nine individuals who approved the president's recommendation to issue the preliminary determination of nonrenewal on February 15, 2000, made the final decision on nonrenewal. None of the MATC district board members who heard the plaintiff's appeal were involved in supervising him in his job at MATC and none were MATC employees. The plaintiff remained employed by MATC through his contract's termination date, June 30, 2000, with full compensation and benefits.

During the period from fiscal year 1996-97 through fiscal year 1998-99, the MATC board approved 762 contract renewals for nonrepresented employees and took the action of only one contract nonrenewal. (Plaintiff's Decl., Exh. P-4).

MATC Policy #C0505 effective December 16, 1998, states:

d.  Probationary Period

   Consistent with Policy C0508, all newly hired nonrepresented employees will be issued a contract which provides for a probationary period of six (6) months with an additional three (3) month extension if deemed appropriate.

9

> Such employees serve at the pleasure of the president during this period and may be disciplined or discharged at any time with or without cause and without recourse to any appeal procedure provided in this policy.

(Plaintiff's Decl., Exh. P-3 at 2).

Neither the unrepresented employee contract for FY 1999-2000, nor Policy #C0505, effective December 16, 1998, governing unrepresented employee contracts, contain any language stating that unrepresented employees, with the noted exception of unrepresented probationary period employees, serve at the pleasure or will of either the president or MATC.

The plaintiff submitted an application to the Human Resources Department for the position of Associate Dean of Natural Sciences. Dr. Robert Helwig, a chemistry instructor in the Natural Sciences Division, recommended that the plaintiff apply for the position. Dr. Helwig told the plaintiff that he was qualified for the position. The plaintiff received acknowledgment from Raquel Ward (nee Roddy) that the application had been received. The plaintiff was not called in to interview for the position. The plaintiff had no personal knowledge that Ms. Ward, an employee of MATC, removed or otherwise interfered with his application for the position of Associate Dean of Natural Sciences.

An October 26, 1998, memorandum from Mr. Bauman to the plaintiff and Mr. Flood, regarding "Performance Appraisal Proposed Timelines" stated: "An improvement plan along with the review process will be required for the less than satisfactory ratings [for the year-end performance appraisal]." (Plaintiff's Decl., Exh. P-7).

Wisconsin Administrative Code TCS § 6.06 requires that each technical college district board establish a grievance procedure for unrepresented employees. On October 26, 2006, the plaintiff mailed a letter to each of the then current board members informing them that MATC had not established a grievance procedure for unrepresented employees and that

10

MATC was in violation of Wisconsin statutes and the Wisconsin Administrative Code for not doing so.

## ANALYSIS

The plaintiff asserts that the defendants violated and conspired to violate his procedural due process rights under 42 U.S.C. § 1983. The plaintiff maintains that he has a property interest in his continued employment with MATC and that the defendants deprived him, and conspired to deprive him, of that right without due process of law. The plaintiff also asserts that, given the circumstances of his termination, the defendants deprived him, and conspired to deprive him, of his liberty interest in his good name and reputation "by the stigmatizing charges made by Defendant Trask against the Plaintiff; and by the actions of Defendant Roddy in interfering with Plaintiff's application for the posted position of Associate Dean-Natural Sciences at MATC," as well as "MATC and the Board in publishing the stigmatizing action taken by the board on the 15th day of February 2000 onto the Internet for all potential employers and professional contemporaries of the Plaintiff to view." (Complaint at 5).

A plaintiff asserting a procedural due process violation under § 1983 must establish both (1) the deprivation of a "cognizable property or liberty interest," and (2) a lack of due process in the deprivation. Omosegbon v. Wells, 335 F.3d 668, 674 (7th Cir. 2003). In examining whether a property or liberty interest exists, courts "look to independent sources, such as state law." Beischel v. Stone Bank School Dist., 362 F.3d 430, 435 (7th Cir. 2004).

The defendants assert that the plaintiff's due process claims fail because he did not have a property interest in continued employment beyond the term of his contract and he was not deprived of a protected liberty interest in connection with MATC's nonrenewal of his contract. Specifically, the defendants assert that the plaintiff was not deprived of a protected

11

liberty interest when Mr. Trask prepared the nonrenewal materials and they were submitted to the district board and MATC did not hire him as Associate Dean of Natural Sciences. They also assert that the plaintiff was not deprived of a protected liberty interest when the MATC board meeting minutes were posted on the internet.

The source and scope of property interests in public employment are found in state, not federal law. See Barrows v. Wiley, 478 F.3d 776, 780 (7th Cir. 2007). As stated by the court of appeals for this circuit, "whether a particular job action against a public employee implicates a constitutionally protected property interest is a question of law; '[p]roperty interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" Id. (citing Deen v. Darosa, 414 F.3d 731, 734 [7th Cir. 2005] (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 [1985]).

Once a court determines that an individual has a property interest in continued state employment, it must determine the minimal procedures which the state must follow before it may deprive him of it. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). The Supreme Court in Loudermill held that public employees with property interests in their state jobs must be afforded pre-termination notice of, an opportunity to respond to the grounds for their termination and a "full post-termination hearing." Id. at 545-48.

The threshold question then is whether the plaintiff has a protected property interest. To be a constitutionally cognizable property interest a person must have a "legitimate claim of entitlement" to the item. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). A unilateral expectation does not suffice. Id. "[T]he existence of a property interest in public employment depends on whether state law has affirmatively created an expectation

12

that a particular employment relationship will continue unless certain defined events occur." Burrell v. City of Mattoon, 378 F.3d 642, 647 (7th Cir. 2004). Thus, the court of appeals for this circuit has "generally required that a plaintiff be able to show that the terms of her employment provide termination only 'for cause' or otherwise evince 'mutually explicit understandings' of continued employment." Omosegbon, 335 F.3d at 675.

The plaintiff asserts that he had a property interest in continued employment because: (1) he had an expectation of continued employment, (2) Mr. Trask entered into an oral employment contract with the plaintiff, (3) Mr. Trask and MATC made promulgations of job security, (4) Policy #C0505 creates a "for cause" standard for nonrenewal, and (5) the duration of his employment at MATC and MATC's practices during that time created a de facto tenure system.

Although the plaintiff asserts that he had an expectation of continued employment, such unilateral expectation alone does not create a constitutionally cognizable property interest. In Roth, the Supreme Court held that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." 408 U.S. at 577. Similarly, the duration of the plaintiff's employment did not create a cognizable property interest in continued employment.

The plaintiff also asserts that Mr. Trask entered into an oral employment contract with him. However, Mr. Trask's statement at the plaintiff's January 28, 2000, mid-year performance appraisal review did not create an oral contract. Although Mr. Trask told the plaintiff that he had said he wanted the plaintiff around for many years to come, he questioned how they could work together given the plaintiff's work performance issues. Furthermore, Mr. Trask did not

13

have the authority to bind MATC to an employment contract. See Wis. Stats. § 38.28. Therefore, Mr. Trask's statement does not create a cognizable property interest in the plaintiff's continued employment. See Shlay v. Montgomery, 802 F.2d 918, 921 (7th Cir. 1986) ("[B]ecause the oral contract would not even be enforceable . . . [the plaintiff] cannot contend that it created a property interest for him in continued employment.").

The plaintiff maintains that promulgations of job security created a cognizable property interest in his continued employment. The only promulgation of job security offered by the plaintiff is Mr. Trask's statement: "I have already expressed to you that I want you around here for many years to come." (Plaintiff's Decl., Exh. P-14).[2] Mr. Trask's complete statement was: "What makes it sad is that I have already expressed to you that I want you around here for many years to come. But how can we work together when you keep giving me dates that you don't make good on, and then when I hold you accountable to those things that you say you are going to do, you get very upset." (Plaintiff's Decl., Exh. P-14). Mr. Trask's statement is not a promulgation of job security. He simply stated that although he would like to continue to work with the plaintiff, the plaintiff's actions and inactions made that unlikely. Mr. Trask's statement clearly does not constitute a "mutually explicit understanding" sufficient to support a claim of entitlement to continued employment. See Perry v. Sindermann, 408 U.S. 593, 601 (1972).

---

[2] The plaintiff does claim that MATC made "promulgations of job security" in 1991 when it issued Policy #C0505. (Plaintiff's Brief at 8 [citing Plaintiff's Decl., Exh. P-2 and P-9]). However, the 1991 version of Policy #C0505 was revised and superceded in 1998 and the 1998 version is applicable in this case.

14

Moreover, as previously indicated, Mr. Trask did not have authority to bind MATC to an employment contract. Therefore, his statement could not create a property interest for the plaintiff in continued employment.

Additionally, although the creation of a de facto tenure system does give rise to a protectable property interest, in this case, the plaintiff cites to no rules or promulgations by MATC that would give rise to a de facto tenure system. Cf. Perry, 408 U.S. at 593 (holding that "there may be an unwritten 'common law' in a particular university that certain employees shall have the equivalent of tenure. This is particularly likely in a college or university, like Odessa Junior College, that has no explicit tenure system even for senior members of its faculty, but that nonetheless may have created such a system in practice.") The duration of the plaintiff's employment with MATC alone is not enough to create a legitimate claim of entitlement to continued employment.

The plaintiff cites to Policy #C0050 subsection d in asserting that his employment contract provides for termination only for cause thereby creating a cognizable property interest in continued employment. That subsection, which relates to the probationary period, provides:

> Consistent with Policy C0508, all newly hired nonrepresented employees will be issued a contract which provides for a probationary period of six (6) months with an additional three (3) month extension if deemed appropriate. Such employees serve at the pleasure of the president during this period and may be disciplined or discharged at any time with or without cause and without recourse to any appeal procedure provided in this policy.

(Plaintiff's Decl., Exh. P-3 at 2). The plaintiff asserts that "[t]here is no other language in the employee contract or in Policy #C0505 which states or implies that the non-probationary employee serves at the will of, or at the pleasure of, the president or MATC, and as such, the

15

contract may create a property interest in continued employment for Erbes." (Plaintiff's Objections and Responses to Defendants' Motion for Summary Judgment [Plaintiff's Response Brief] at 9).

Contrary to the plaintiff's assertion, a property interest in continued employment is not created by Policy #C0505's provision that probationary employees serve at the pleasure of the president and may be discharged at any time with or without cause. The plaintiff was not discharged. Rather, his contract was not renewed. Policy #C0505 does not require cause for nonrenewal. The undisputed facts establish that the only limitations on MATC's right not to renew the contract is the requirement of notice. In fact, the policy concerning nonrenewal contains no substantive limitation on MATC's discretion to decide whether to renew an employee's contract.

In this case, the undisputed facts establish that the plaintiff worked under a series of annually renewable one-year employment contracts during his entire time at MATC. The plaintiff's final one-year contract dated May 17, 1999, provided that he would be employed for a one-year period beginning July 1, 1999, and ending on June 30, 2000. That contract incorporated by reference Policy #C0505 which contained the Renewal/Nonrenewal provision. According to that provision, the president makes a recommendation to the district board that a contract either be renewed or not renewed. The recommendation is based on various considerations including performance appraisals, failure to conform to a performance improvement plan, and other appropriate matters. The provision also provided that the district board may act on the president's recommendation so that a written preliminary notice of nonrenewal is issued to the employee on or before February 28. (Stekloff Decl., Exh. A, Plaintiff's Dep., Exh. 2 at 6).

16

MATC provided the plaintiff timely notice of both the preliminary and final notice of nonrenewal pursuant to Policy #C0505. The plaintiff remained employed by MATC with full compensation and benefits through the final contract's termination date, June 30, 2000.

In addition to asserting a property interest in continued employment with MATC, the plaintiff also asserts that the defendants, in not renewing his contract, infringed on his liberty interest. A plaintiff's liberty interest in the loss of a job concerns his ability to obtain future employment. In Hedrich v. Board of Regents of University of Wisconsin System, 274 F.3d 1174, 1183 (7th Cir. 2001), the court explained: [i]f the character and circumstances of a public employers . . . conduct or statements are such as to have destroyed an employee's freedom to take advantage of other employment opportunities, the employee can bring suit based on the deprivation of his freedom to pursue the occupation of his choice." (quoting Bordelon v. Chicago School Reform Bd. of Trustees, 233 F.3d 524, 531 [7th Cir. 2000]).

No liberty interest claim arises merely from a termination. See Hedrich, 274 F.3d at 1184. For a public employer to infringe upon an employee's liberty interest, the public employer must not only make it "virtually impossible" for the employee to find work in his field, the employer must also disseminate information that interfere's with the plaintiff's ability to find work. Lashbrook v. Oerkfitz, 65 F.3d 1339, 1348-49 (7th Cir. 1995). Thus, a termination is only stigmatizing if it is accompanied by a publicly announced reason that "impugns [the employee's] moral character or implies dishonesty or other job-related moral turpitude." Hedrich, 274 F.3d at 1184 (internal quotations and citations omitted).

Here, the undisputed facts establish that following the plaintiff's departure from MATC in June 2000, he obtained an information technology position at ECS. He started at ECS a few weeks after his employment at MATC ended and was paid the same salary he had

17

received from MATC. Clearly, MATC did not make it "virtually impossible" for the plaintiff to find work in his field. See Lashbrook, 65 F.3d at 1348-49.

In addition, the plaintiff failed to establish that MATC disseminated information that interfered with his ability to find work. See Lashbrook, 65 F.3d at 1348-49. The packet of materials submitted to the MATC district board pertained to Mr. Trask's perception of the plaintiff's job performance and his inability to meet Mr. Trask's performance expectations. The materials did not impugn the plaintiff's moral character or integrity and nothing implied that the plaintiff was dishonest or immoral. Accordingly, dissemination of the material to the MATC district board does not constitute a deprivation of the plaintiff's liberty interest. See Lashbrook, 65 F.3d at 1349 ("[N]ot even a direct claim of incompetence is enough to impinge a liberty interest."). Moreover, these materials were never publicly disclosed outside of MATC and the board itself.

To the extent that the plaintiff challenges the posting of the MATC board meetings minutes on the internet, such postings did not call into question the plaintiff's integrity or job-related moral turpitude. The district board merely published its minutes and the fact of the nonrenewal of the plaintiff's contract on the internet. Thus, the defendants' posting of the board meetings minutes did not constitute a deprivation of the plaintiff's liberty interest. See Beischel, 362 F.3d at 439 (holding that conclusions reached by the board after a hearing are not the sort of statements giving rise to a deprivation of a liberty interest).

The plaintiff also asserts that MATC's failure to hire him for the associate dean of natural sciences position deprived him of a liberty interest. However, the plaintiff did not have a liberty interest in prospective employment at MATC.

18

Accordingly, upon due consideration and for the reasons stated herein, the defendants have established that they are entitled to summary judgment. Therefore, their motions for summary judgment will be granted.

## **ORDER**

**NOW, THEREFORE, IT IS ORDERED** that defendant Lester C. Ingram's motion for summary judgment be and hereby is **granted**. (Docket # 106).

**IT IS FURTHER ORDERED** that defendants Milwaukee Area Technical College, Racquel Ward, Sheila Cochran, Lauren C. Baker, Julian Jasper, William Roden, Mark Trask, Vivian E. Joyner and Gary Hamburg's joint motion for summary judgment be and hereby is **granted**. (Docket # 109).

**IT IS FURTHER ORDERED** that this action be and hereby is **dismissed**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 17th day of November, 2008.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge